## CLOUGH v. ADAMS.

1. **Pleading:** AMENDMENT DURING ARGUMENT: ALLEGATIONS NOT CONTROVERTED ADMITTED. Where the ground upon which plaintiff sought a rescission of a conveyance of real estate was that it was obtained by fraud and undue influence, and for a grossly inadequate consideration, *held* that an amendment to her petition, in which she alleged that she and her husband were of weak intellect, and were wanting in capacity to engage in important business transactions, and that, at the time of the transaction in question, they were in financial distress, was material to the case, but did not state a new cause of action or ground of relief, and that under Code, § 2689, it was properly allowed to be filed after the evidence was all in, and during the argument of the case; *also,* that the averments contained in the amendment, not being denied, were to be taken as true, under Code, § 2712, in the further consideration of the case.

2. **Contracts:** INCAPACITY AND UNDUE INFLUENCE: RELIEF IN EQUITY. The acts and contracts of persons who are of weak understanding, and who are thereby liable to imposition, will be held void in courts of, equity, if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning or artifice or undue influence; and *held* that the facts of this case (see opinion) ir

which plaintiff and her husband were induced to convey their homestead for a patent right, worthless in their hands, bring it clearly within the rule above stated.

### Appeal from Clinton District Court.

### THURSDAY, MARCH 3.

ACTION for the rescission of a conveyance of real estate, on the alleged ground that it was obtained by fraud and undue influence, and for a grossly inadequate consideration. The district court entered judgment for plaintiff, and defendant appeals.

Robert T. T. Spence, P. J. Clausen and W. C. Grohe, for appellant.

Ellis & McCoy, C. W. Chase and A. T. Wheeler, for appellee.

REED, J.—The property in question consists of two lots in the city of Lyons, on which is situated a two-story brick dwelling house. Plaintiff conveyed the property to defendant in consideration of the assignment by him to her husband of the right to manufacture and sell a "patent spring bed-bottom" in certain counties in Illinois. At the time of the transaction, the real estate was worth about $2,500. It was incumbered with a mortgage which amounted to about $1,000, and the defendant took it subject to that mortgage. The trade was effected by an agent in defendant's employ, one Garland, who was also assisted to some extent in the transaction by one Charles Upham. Plaintiff had owned the real estate for some years, and she and her family occupied it as a place of residence. The debt secured by the mortgage on the premises was about to fall due, and neither she nor her husband had the means with which to pay it, and they had for sometime been offering the place for sale. Upham resided in Lyons, and he knew that plaintiff desired to sell the place. Defendant and Garland

Clough v. Adams.

resided at Monroe, Wisconsin.   Defendant owned an interest in the " Silver patent spring bed-bottom," and Garland was employed by him to sell the right to manufacture and sell the article in the territory owned by him.   The latter had been engaged exclusively in the business of buying and selling " patent-rights " for about three years, and, prior to that, had dealt to some extent in property of that character.   The right owned by defendant did not sell readily for money, and the parties appear to have adopted the plan of trading it for property erty.   It appears also that they preferred to trade for property which was incumbered, and to take it subject to the incumbrances.   This preference is to be accounted for, we suppose, by the fact that one who is under financial embarrassment, and whose property is in that situation, is naturally not so careful to insist upon a full equivalent for the right therein which he parts with, as a person who is under no embarrassment would be.   A day or two before the transaction in question, Garland went to Lyons for the purpose of disposing of territory, if he should be able to do so.   He learned from Upham that plaintiff and her husband desired to dispose of their property, and they went together to see them, with the object of working up a trade with them, if they found them inclined to trade.   A negotiation was entered into, which, in a very short time, resulted in the trade in question.

Plaintiff alleged in her original petition that she was induced to enter into the transaction, and to part with her **1. PLEADING:** property, by certain false and fraudulent repre- amendment during argu- sentations, made by Garland and Upham, as to ment : allega- tions not con- the value of the right they proposed to trade her. troverted ad- mitted. Also that they obtained an undue influence over her, and by their importunities and persuasions overcame her will, and induced her to make the trade.   Also that the right assigned to her husband was valueless, and constituted no adequate consideration for the conveyance of her property. After the evidence had all been introduced in the district court, and while the cause was being argued by counsel,

plaintiff asked and obtained leave to file an amendment to her petition, in which it was alleged that both she and her husband were of weak intellect, and were wanting in capacity to engage in important business transactions, and that, at the time of the transaction in question, they were in financial distress. Defendant moved to strike the amendment from the files, because it was filed out of time, and it introduced a new issue or cause of action, and the allegations contained in it were immaterial. This motion being overruled, defendant elected to stand on that ruling, and did not answer the amendment; and the overruling of the motion is one of the matters complained of on this appeal.

We are of the opinion that the motion was properly overruled. The amendment did not materially change the issue. No new cause of action or ground of relief was pleaded in it. As stated above, the ground upon which plaintiff sought a rescission of the conveyance was that it was obtained by fraud and undue influence, and that the consideration paid for it was grossy inadequate. The matters pleaded in the amendment were material to the case as made by the original petition and answer. The fact that plaintiff and her husband were of weak understanding, standing alone, would afford no ground for rescission, there being no claim that they were *non compos*. But when considered in connection with the other circumstances of the transaction, it may be of the highest importance in determining whether the parties are entitled to relief in equity. And the same is true as to the allegation that the parties were in financial distress at the time of the transaction. That fact alone would not have entitled them to relief; but, if true, it might be an important circumstance in the case. Under Code, § 2689, the insertion, by way of amendment, at any time, of allegations material to the case, is allowable. The question whether an amendment shall be allowed is addressed largely to the discretion of the lower court; and, in the present case, we are very clear that there was no abuse of that discretion.

The allegations contained in the amendment, not having been controverted by any subsequent pleading, are, for the **2. CONTRACTS:** purposes of the case, to be deemed true. Code, **incapacity and undue influence: relief in equity.** § 2712. We start out, then, in the consideration of the merits of the case, with two important facts admitted by the pleadings, viz.: That plaintiffs are persons of weak understanding, and that they were under financial embarrassment at the time of the transaction. But if the transaction was fair, and the conveyance was supported by an adequate consideration, a court of equity, as we have already said, could not rescind the conveyance because of those facts. We will, therefore, proceed to consider the other material facts of the transaction. As already stated, Garland is a dealer in patent-rights. He is presumed to have had some success in the business from the fact that, from being an occasional dealer in that character of property, he had come to devote all of his time and energies to the business of buying and selling it. It is also to be presumed, from the fact that his employer pays him a large salary for his services, that he possesses the enterprise and peculiar skill which is essential to success in the business. Upham had also had some experience as a dealer in patent-rights. At the time of the transaction he was the owner of a large extent of territory under the same patent. He had also sold some territory, and he was then engaged in manufacturing and selling the patented article at Lyons.

There is great conflict between the testimony of plaintiff and her husband, and that of these parties, as to what took place during the negotiation. We are satisfied, however, that the advantages which would be likely to accrue to plaintiff and her husband from the purchase of the territory were depicted in very glowing terms. Stories were told of great profits which had been realized by persons who had engaged in the manufacture and sale of the articles. Other statements were made of large profits accruing to the owner of territory, as royalty on the manufacture of the article. Garland repre-

sented that he was the owner of two eastern states, and that he had received $2,500 as royalty for the manufacture of the articles in those states. There may have been a grain of truth in some of these statements. Others, we believe, were wholly and positively false. They were all made for the purpose of kindling in the heart of plaintiff and that of her husband a hope of gain which the parties who made them must have known would never be realized, and of inducing them to part with their property for something which it must have been apparent would in their hands be without value. The patented article is doubtless not without merit; but, on the market, it comes in competition with a great number of others of the same character, many of which are of equal merit, and some of which are now patented, so that the profits which accrue from the manufacture and sale of the article are too small to justify paying anything for the privilege of manufacturing it. Something might be realized, perhaps, by a shrewd and enterpising speculator like Garland from the sale of the territory; but plaintiff's husband is not of that character. It was perfectly apparent that he did not possess the enterprise nor skill that would enable him to realize anything by selling it. He unfortunately belongs to the class of "weaklings" who are always found on the wrong side of the final deal in patent-right territory. Plaintiff and her husband readily fell into the scheme. They were led to believe, by the glowing picture that was held up before them, that the purchase of the right would afford them, not only speedy deliverance from their financial distress, but the means of acquiring great wealth. Their weak judgments were subjugated by the strong natures with which they were dealing. They had neither the will to resist the spell that was about them, nor the judgment to see the absurdity and folly of the act they were being led to commit. They were given no opportunity for deliberation or consultation with friends or between themselves. The moment they consented to make the trade, an officer was sent for, and the

conveyances were executed and delivered. Garland and Upham were careful to secure the entire consummation of the trade before giving them any opportunity for cool thought or consultation.

We think it clear that the case is one for equitable relief. The doctrine applicable to cases of this character is stated by Story, in his work on Equity Jurisprudence, as follows: " The acts and contracts of persons who are of weak understanding, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning or artifice or undue influence." Section 238. See, also, *Tracey v. Sacket*, 1 Ohio St., 54; *Freeland v. Eldridge*, 19 Mo., 325; *Earl of Chesterfield v. Janssen*, 2 Ves. Sr., 124; *Dunnage v. White*, 1 Swanst., 137. The pleadings and evidence in the present case bring it clearly within the operation of this rule.

The judgment of the district court will be

AFFIRMED.