WILLIAM MEYER, APPELLEE, V. WARREN P. FISHBURN ET AL., APPELLANTS.

FILED JULY 22, 1902. No. 11,869.

Commissioner's opinion, Department No. 1.

1. **Acts and Contracts:** PERSON OF WEAK UNDERSTANDING: UNDUE INFLUENCE: ARTIFICE. The acts and contracts of a person of weak understanding will be set aside by a court of equity, when the nature of the acts or contracts justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented or overcome by cunning, artifice or undue influence.

2. **Rescission of Contract:** FRAUD: UNDUE INFLUENCE: STATU QUO: EXCEPTION. It is a general rule that a party who seeks to rescind a contract entered into fraudulently or under undue influence, must return or offer to return the property acquired by such contract within a reasonable time, and so place the adverse party *in statu quo*. An exception to that part of the rule requiring a return of the property arises where the party guilty of the fraud and undue influence, and as a part of the general wrongful design, has by advice or interference, induced the other party to part with his property. In such a case a tender of the value of the property received is sufficient.

3. **Offer to Rescind.:** MIXED QUESTION OF LAW AND FACT. Whether the offer to rescind has been made within a reasonable time, is a mixed question of law and of fact depending upon the peculiar facts and circumstances of each case.

4. **Evidence.** Evidence examined, and *held*, under the facts and circumstances and the relation of the parties, that the offer to rescind was made within a reasonable time.

APPEAL from the district court for Jefferson county. Heard below before LETTON, J.  *Affirmed.*

*John Heasty* and *E. H. Hinshaw,* for appellants.

*A. R. Scott, F. M. Suiter* and *John C. Hartigan, contra.*

DAY, C.

The plaintiff brought this action in the district court of Jefferson county against the defendant, praying that certain deeds to real estate executed by the former to the latter be canceled and set aside; that the title to said premises be quieted in the plaintiff, and for general equitable relief. The action was based upon the alleged ground that the deeds were obtained by fraud and undue influence, and for a grossly inadequate consideration. The answer denied such allegations of the petition as tended to impeach the validity of the transaction. The district court canceled and set aside the deeds from plaintiff to defendant, and quieted the title to the land in the plaintiff and decreed the defendant a lien upon the premises for $600, which was the value of the property, as found by the court, which defendant transferred to plaintiff as a consideration for the trade. From this decree the defendant appeals.

It appears that on or about February 28, 1898, the plaintiff was the owner of a quarter section of land in Jefferson county, Nebraska, subject to the life estate of his grandmother, who at that time was seventy-three years old and in feeble health. The grandmother died about a year later. The plaintiff was twenty-two years old, and had but little education and no business experience, and apparently had little conception of the relative values of property; and

while his mental imbecility did not amount to an absolute disqualification, it showed such a flagrant disregard of his own interests and such a lack of knowledge of values, as to challenge a strict examination of his contracts. The defendant, on the other hand, had been conducting a bank for a number of years in the town of De Witt, was a shrewd, experienced business man, and from his social and business standing in the community, it is easy to understand how he might acquire an undue influence over the plaintiff. Prior to the transaction here complained of the plaintiff and defendant had some dealings which placed them in such relationship that plaintiff seemed to regard the defendant as his friend, and confided to him certain fears lest his brother-in-law might make some trouble in regard to the land. On the day above mentioned the plaintiff traded the south 80 acres of his quarter section in Jefferson county to the defendant for 160 acres in Lincoln county, Nebraska. The testimony on behalf of the plaintiff, which was denied by the defendant, tended to show that as an inducement to the trade the defendant represented his land as a nice smooth piece of land, with a house and barn and windmill on it; that it was five miles away from the sand-hills; that a part of it was under cultivation, and that it was worth $3,000. The defendant had been upon the plaintiff's land, and was well acquainted with the condition of the title and its value. Without further investigation or inquiry, deeds were immediately executed by the respective parties, the trade consummated and the deeds recorded. A few days after this exchange the parties met upon the street, and plaintiff asked defendant what he had to trade for plaintiff's north eighty of the quarter section in Jefferson county. After some bartering, common among traders, the plaintiff traded the defendant his north eighty for a house and lot in the town of De Witt and $100 in cash, and deeds were executed and exchanged, and the trade consummated. The testimony is clear that the land which plaintiff deeded to defendant was worth at the time $5,000. The defendant testified that he did not consider

there was any difference in value between the north and
south eighty, so that it sufficiently appears that the two
eighties were worth $2,500 each. The testimony is over-
whelming that the Lincoln county land was not worth to
exceed $160; that it had no improvements on it except a
sod house, which had been abandoned, and was in a state
of ruin and decay. The testimony is also clear that the
DeWitt property was not worth to exceed $350. In these
two trades the plaintiff parted with land worth $5,000, and
received in exchange therefor property worth not to ex-
ceed $610. The record also shows that within a few weeks
the plaintiff, under the advice of the defendant, traded the
Lincoln county land for property in Kansas which he had
not seen, and knew nothing of its value, and in this trade,
as would be expected, plaintiff was again on the wrong
side of the bargain. A few weeks later he traded the De
Witt property for a team of horses and an old buggy and a
set of double harness, the purchaser assuming a mortgage
of $65, which he had placed upon the property during the
brief period he had owned it. In this trade the plaintiff'
also consulted the defendant, and he advised him "that it
was a good trade." We think the record is amply sufficient
to show, as to the trade for the Lincoln county land, that
the defendant was guilty of actual fraud. The representa-
tions made by him with reference to the improvements
upon the land, its general character and worth, were all
untrue. As to the De Witt property, while it is true that
the plaintiff had an opportunity to and did examine the
property before he made the trade, the fact that he was
willing to exchange his property, valued at $2,500, for
property worth not to exceed $450, shows such a weakness
of judgment, and such a lack of knowledge of values, that
it would be an easy matter for a designing person to un-
duly influence the plaintiff against his own interest. The
record also shows that some time after the trade the plain-
tiff's friends advised him that he had been swindled by
the defendant, and thereupon he consulted an attorney
with reference to an action to recover his land. The fact

that the terms of the trade had become a matter of comment, and that friends of the plaintiff were insisting that he had been swindled, seems to have reached the defendant, and at his request the plaintiff signed a letter prepared and written by the defendant, as follows:

"De Witt, Nebraska, May 13, 1899.

"*W. P. Fishburn:* There has been a great deal said regarding your and my trade, that is, the trade in which you deeded me a one hundred and sixty acres of land in Lincoln county, Nebraska, for south one-half of southeast one-fourth of section one, town 4, range 4, Jefferson county, Nebraska. And your trading me lot No. 933 in the village of De Witt, Saline county, Nebraska, and cash for the north one-half of southeast quarter of section one, town 4, range 4, Jefferson county, Nebraska. I wish to say that it was a fair trade and that you did not misrepresent anything in the trade with me. I got value received for my farm and do not propose to make you any expense or trouble as you are the rightful owner of S. E. ¼ of section one, town 4, range 4, Jefferson Co., Nebr., and have a perfect right to sell the same. William Meyer."

A few days later, at the request of the defendant, he executed a quitclaim deed to defendant for the premises, and also made an affidavit, in which he alleged that no fraud had been perpetrated upon him in the trade; that it was a fair and square deal. It is impossible to read the record without being impressed with the mental imbecility of the plaintiff, and while there is no direct evidence bearing upon his mental capacity, the fact that his trades were so improvident and foolish, and his subsequent statement that he got value received for his farm, and his affidavit that it was a fair and square deal, are so at variance with the truth, that we are convinced that the defendant exercised a peculiar domination over the plaintiff amounting to undue influence. The whole transaction indicates and justifies the conclusion that the defendant did not exercise a deliberate judgment, but that he was imposed upon and overcome by undue influence.

We recognize as a general rule that a court of equity can not undertake to inquire into and measure the size of men's capacities and understandings, there being no such thing as an equitable incapacity when there is a legal capacity. But whatever weight this rule may be entitled to, and whatever its application, it is obvious that mental weakness, although not sufficient to show an absolute dis-- qualification, is a very important circumstance in determining whether a contract has been obtained through fraud, imposition or undue influence; and when the contract is of such a nature as to justify the conclusion that a party has been imposed upon by cunning, artifice or undue influence, a court of equity will not hesitate to set the contract aside. *Clough v. Adams,* 71 Ia., 17, 32 N. W. Rep., 10; *Tracey v. Sacket,** 1 Ohio St., 55. The doctrine applicable to the case now before us is stated by Story in his work on Equity Jurisprudence, as follows:

"Sec. 238. The acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, or artifice, or undue influence."

It is urged by the defendant that because the plaintiff is unable to restore the property which he received in the trade, he is barred of the remedy sought by him in this action. It is a general rule that a party who seeks to rescind a contract entered into fraudulently or under undue influence must return or offer to return the property acquired by such contract within a reasonable time, and so place the adverse party *in statu quo.* There are some exceptions to the rule, however, one of which is where the party guilty of the fraud has put it out of the power of the party to make such return. *Symns v. Benner,* 31 Nebr., 594. The same exception to the rule obtains when the party guilty of the fraud or undue influence, and as a part

*59 Am. Dec., 610.

of the general wrongful design, has, by advice or active interference, induced the other party to part with his property. In such case a tender of the value of the property received is sufficient. In the case now before us, it is a fair deduction from the testimony that the defendant's active efforts to secure a trade for the plaintiff for his Lincoln county land, and his advice to the plaintiff to trade the property he had received, was in furtherance of his wrongful design, and was given for the very purpose of putting the plaintiff in a position where he could not tender back the property. From a thorough examination of the record it seems to us that in making the trades in the first instance, and in subsequently writing the letters and making the affidavit and quitclaim deed, the plaintiff was so under the domination of the defendant, and that such undue influence was exercised over him, that a court of equity ought not to hesitate to set the contract aside.

In our opinion, the judgment of the lower court is not only sustained by the evidence, but it is eminently just, and we therefore recommend that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.