MICHAEL JORDAN ET AL., APPELLANTS, V. ROBERT E. EVANS ET AL., APPELLEES.

FILED APRIL 15, 1916. No. 18584.

1. **Infants: SUMMONS: SERVICE.** Service of summons on an infant under the age of 14 years merely by leaving a copy at his usual place of residence, and without service upon mother, father, guardian, or the person having his care and custody, or with whom he lives if they can be found, is void and of no effect. Rev. St. 1913, sec. 7637.

2. **Attorney and Client: APPEARANCE: PRESUMPTION.** An attorney at law being an officer of the court, there is a strong presumption that his appearance in an action is authorized, and the burden of proof is upon one who asserts the contrary to establish the fact by clear, convincing and satisfactory evidence.

3. **Parties: INDISPENSABLE PARTIES.** Indispensable parties to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*R. C. Roper,* for appellants.

*R. E. Evans, J. J. McCarthy* and *Fred S. Berry, contra.*

LETTON, J.

In 1889 Mary Jordan became the owner of 240 acres of land in Dakota county. She and her husband, John Jordan, lived upon and farmed the land. Debts were contracted which resulted in a number of judgments being rendered against both Mr. and Mrs. Jordan in favor of E. H. Monroe & Company and other creditors. On December 19, 1894, the Jordans, being old and incapacitated, made a disposition of their property among their children in such a manner as to secure for themselves a home for the remainder of their lives. They made and delivered to their sons, John Jordan, Jr., and Patrick Jordan, who had been farming the land as tenants, a warranty deed to the farm. In consideration for this conveyance a bond was executed by the sons in the sum of $2,000 which bound them to pay existing mortgages on the farm to the amount of $2,150 and interest, and also to pay $200 annually to their parents and the survivor, as well as to carry out other provisions for the old people. As a further consideration, separate notes, amounting in all to $3,300, were made by Patrick and John, each payable in six annual instalments to the seven other children, and secured by seven separate mortgages on the land. The notes to Michael are in evidence. There is testimony that the notes to the others were afterwards burned in a fire which destroyed the family residence. The deed and mortgages were placed on record on December 29, 1894. The grantees took possession at once. On November 18, 1895, a creditors' suit was begun in the district court for Dakota county by E. H. Monroe & Company against the grantees and mortgagees in these conveyances. The petition alleged the recovery of a judgment against Mr. and Mrs. Jordan, that the family settlement was in fraud of creditors, and prayed that the conveyances be set aside and the property sold to satisfy the judgment. At this time two of the children, Nellie Jordan and Michael Jordan, were minors under 14 years of age, and Winifred was a minor over 14 years old, all residing with their par-

ents. The record shows that an answer was filed by one Kamanski, an attorney at Bloomfield, where Thomas then lived, purporting to be signed, "Mary Jordan et al., by Thomas Jordan." Afterwards other creditors were permitted to intervene, the last petition being filed on February 11, 1897. A motion filed by Kamanski asking that the petitions in intervention be made more definite and certain was overruled on March 9, 1897. In May, 1897, Paul Pizey was appointed guardian *ad litem* for the minor defendants. Testimony was taken, the deed and mortgages were decreed to have been fraudulently made, and were set aside in favor of the attacking creditors. Several years afterwards a sale was had of 80 acres of land under this decree to one T. A. Berry, trustee, from whom by mesne conveyances defendant Lamp derives his title. The object of the present action is to set aside the decree in the creditors' suit as being secret, fraudulent and unauthorized, to declare the title to the land to be in Patrick and John Jordan, and to foreclose the mortgages described.

The service of summons upon Nellie and Michael was void, for the reason that no service was made upon the parents or guardian as the statute requires, and it may be conceded that the return was impeached as to service upon four of the other children who then resided in Knox county.

Plaintiffs' contention is that by reason of a conspiracy the decree was secretly rendered at a time when the case had been previously continued to a later term, and without notice to any of the plaintiffs; that at a later term the case was dismissed for want of prosecution, but the entry of this judgment on the trial docket was erroneously made in another case, and that Kamanski had no authority to appear for any other parties to the suit than Patrick Jordan and John Jordan, Jr. The record is voluminous and the facts are out of the ordinary. After a careful consideration of all the testimony (which must be analyzed and compared in all its parts in order to extract the truth, being

full of contradictions and improbabilities) and consider-
ing the admissions and inconsistencies appearing in the
testimony of the Jordans, the usual course of human con-
duct, the presumption as to the appearance by an attorney,
an officer of the court, and a number of incidents occurring
subsequent to the rendition of the decree, we feel satisfied
that Kamanski was at least tacitly authorized to act in be-
half of the defendants who were then *sui juris*. The ques-
tion is not free from doubt, and yet, giving due weight to
the presumptions that attend the record of judicial tribu-
nals, we feel that this is the proper conclusion. We hold,
therefore, that the decree of May 24, 1897, was valid and
effectual in favor of the creditors as against all defendants
except the two minors under 14 years of age who were not
served as the statute requires. This is the same conclusion
arrived at by the district court.

The plaintiffs charge that R. E. Evans, judge of the dis-
trict court for Dakota county at the time the Monroe decree
was rendered, "acting in collusion and conspiracy with the
other defendants herein and other coconspirators hereto-
fore named," unlawfully and without authority permitted
the decree to be fraudulently entered after the case had
been continued. It is also charged that the conspirators
allowed the plaintiffs Patrick and John Jordan to remain
in possession of the premises until December 23, 1905,
when Judge Evans "and Fred S. Berry, his coconspirator,"
procured an order of sale to be issued and a pretended sale
was made to one Thomas A. Berry, who fraudulently pre-
tended to be acting as trustee for the creditors. A number
of other charges of fraud and collusion are made against
these gentlemen. It is clearly shown by the testimony that
at a subsequent time Evans (who had retired from the
bench) and Berry, who were then acting for the creditors,
Mr. Jay having died in the interim, offered, after the dis-
missal of the proceedings in the case of Jordan v. Hanson,
to release all claim to the land if the Jordans would pay
the amount of the judgments and costs, but this was never

done. We are satisfied from a careful inspection of the record that there is no evidence to support the allegations of fraud, collusion, or conspiracy, and that these charges are entirely unwarranted. We know of no rule of morals or ethics which debars a former judge, years after he has left the bench, from becoming the purchaser of real estate, the title to which had passed to a former holder of the title by virtue of a sale under a decree rendered by the court when he was acting as judge. Nor is the mere fact that an attorney in such proceedings afterwards buys from the purchaser at judicial sale a ground for criticism of his conduct.

It is urged that the Monroe decree is void for the want of service on the minor heirs under 14 years of age, since they were indispensable parties to the action. Indispensable parties are those who not only have an interest in the subject matter of the controversy, but (1) an interest of such a nature that a final decree cannot be made without affecting their interests, or (2) leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Chadbourne's Exr's v. Coe,* 10 U. S. App. 78; and cases cited in 15 Ency. Pl. & Pr. 611, 614.

Tested by this definition, did these minor heirs (1) have an interest in the controversy of such a nature that a final decree could not be made without affecting their interests? We are unable to see how a decree setting aside the deed to Patrick and John and the mortgages to the other parties defendant in favor of creditors could anywise affect the interests of these minors. Not having been brought into court, the decree was an absolute nullity as to them, and, so far as they are concerned, the deed to Patrick and John and the mortgages given to these children are valid and effectual. They have had no day in court with respect to the issue of their validity. Furthermore, the purchaser at the sale under the decree became possessed by his purchase

of all the interest in the real estate of the other defendants who were served or appeared in the action.

Was the controversy in the Monroe case (2) left in such a condition that its final determination was "wholly inconsistent with equity and good conscience?" It is apparent that the omission of these defendants was not wholly inconsistent with equity and good conscience so far as the plaintiffs were concerned, and the presence or absence from the suit of these minors could not and did not affect the justice of the decree or the interests of the other defendants. If it had been known that the entire interests of all the children were not subject to the decree, the purchaser at the sale might not have been willing to pay so high a price for the land, but this could not and did not affect the merits of the case. It was for the plaintiff in that case to decide whether it would proceed to decree under such circumstances, and the absence of these parties could affect adversely the plaintiff alone. It is not infrequent in cases of mortgage foreclosure that some party having an interest in the premises is not brought into the suit. This does not affect the validity of the foreclosure, but merely leaves an outstanding interest which the purchaser at the sale does not acquire. The decree was final and effectual as to those before the court. These minor heirs, therefore, were not indispensable parties to the action, and the failure to bring them in by proper service does not affect the validity of the decree as to the other defendants.

It is urged that, because the decree set aside the deed and all of the several mortgages upon the entire 240 acres, it was indivisible. It is true this is its purport, but the decree was only effectual to do this in behalf of creditors alone. When the sale of the 80 acres satisfied the creditors' claims, the decree had served its purpose, could operate no farther, and the deed and mortgages were as valid and effectual as if no such action had ever been maintained or decree rendered.

The district court found that the Monroe decree was valid as to all defendants except the minors under 14 years of age. It foreclosed the mortgages held by them, and provided the 160-acre tract be sold first, and, if the amount realized be insufficient, then the 80 acres should be sold. Since defendant Lamp appears to have purchased without knowledge of the infirmity of the title to the 80-acre tract, and defendant Hemstreet who purchased the mortgage executed by Lamp was equally innocent, this seems to be a just and equitable decree.

We have reached the same conclusion as did the district court. Its judgment is

AFFIRMED.