Wilson v. Bergmann.

---

JAMES S. WILSON, APPELLANT, V. EDWARD F. BERGMANN, APPELLEE.

FILED MAY 8, 1924.    No. 23415.

1. **Specific Performance.** Specific performance is not generally a legal right, but is directed to the sound legal discretion of the court, and it will not be granted where its enforcement would be inequitable.

2. ———: DENIAL. Evidence examined, and *held* that the decree denying specific performance was properly rendered.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*William G. Rutledge* and *W. W. Wilson,* for appellant.

*Kelligar & Ferneau, R. F. Neal,* and *E. F. Armstrong,* contra.

Heard before MORRISSEY, C. J., ROSE, DAY and GOOD, JJ., and REDICK, District Judge.

DAY, J.

The plaintiff, James S. Wilson, vendor, brought this action against Edward F. Bergmann, vendee, for specific performance of a contract for the sale of 80 acres of land. The trial court denied specific performance, but required the defendant to pay to the plaintiff $890, being the amount

expended by the plaintiff in placing himself in position to perform the contract. Plaintiff appeals.

The record shows that on August 31, 1921, the parties to this action signed the written contract upon which this suit is founded, wherein the plaintiff agreed to sell and the defendant agreed to purchase the land specifically described in the contract. By the terms of the contract the defendant agreed to pay $22,000 for the land, payable as follows: $1,000 upon the execution of the contract; $11,000 on March 1, 1922; and to assume a mortgage then upon the land for $10,000. The contract provided that a deed was to be executed forthwith and delivered in escrow to a certain bank where settlement was to be made on March 1, 1922, at which time the deed was to be delivered and possession given to the defendant. The third day following the signing of the contract the defendant notified the plaintiff that he could not perform the contract, and that he rescinded the same. Defendant also stopped payment of the check he had given to plaintiff as the initial payment on the contract. Thereafter the plaintiff completed the abstract, paid the taxes on the land, paid the interest on the $10,000 mortgage up to March 1, 1922, and on that date went to the bank prepared to perform the conditions of the contract on his part. Defendant failed to appear. The following day the plaintiff commenced this action.

By way of defense the defendant pleaded his lack of business experience; his mental incapacity to understand and appreciate the full purport of the contract; that plaintiff and his agent misrepresented the value of the land; that they unduly influenced him to enter into the contract; that under all the circumstances the contract is unfair, inequitable, and unjust; and that performance thereof would cause him to lose all his property, including a quarter section of land given to him by his father.

The trial court found that the defendant voluntarily and understandingly entered into the contract; that there was no fraud or misrepresentations practiced by the plaintiff or his agent in procuring the contract; and that the land

was worth not to exceed $250 an acre at the time the contract was signed; and that the performance of the contract at the price agreed upon, $275 an acre, would be so great a burden and hardship upon the defendant that a decree of specific performance would be inequitable. The court also found that the plaintiff had paid $450 to the tenant upon the land to obtain his consent to surrender his lease upon the premises, and the further sum of $440 to his agent for making the sale.

Upon these findings the decree of the court denied specific performance, and required the defendant to pay to the plaintiff $890, with interest. It is quite evident that the intention of the trial court was to place the parties *in statu quo*, as nearly as could be done.

The record shows that the defendant was a young man, under 23 years of age, with but little education, and with very limited business experience. Notwithstanding the wish of his father to the contrary, he quit school at the age of 15, at which time he had reached the seventh grade. He could read with difficulty; he could not compute interest; his perceptions were dull. After leaving school he worked on a farm for a neighbor until he reached his majority, his father claiming his wages during that period. On becoming of age his father gave him a quarter section of land which adjoined the 80 acres now in controversy. This action on the part of the father was prompted by a desire to treat all his children alike, as he had given the same amount of land to his other children. His father testified that "he was awful easy;" that the "things he bought, he paid two prices for;" and that he was trustful of others. It also appears that the defendant was contemplating marriage, and as his land had no house upon it, he readily entered into negotiations for the purchase of the 80 acres in question, as there was a small house thereon.

It further appears that, a few days prior to the date of the signing of the contract now in issue, the agent of the plaintiff had procured from the defendant a contract to purchase this same land upon the same terms. At that time

defendant gave his check for $1,000 as part of the purchase price. This check was drawn upon a bank other than the one upon which the check in the present action was drawn, and in which bank defendant had insufficient funds to pay the check. The next day the defendant went to the agent and informed him that he could not go on with the contract; that his father was opposed to it; and that he could not pay it. The agent told him that it would be all right so far as he was concerned, but that it would be necessary to see the plaintiff. Thereupon the agent took the defendant to the plaintiff, who declined to release the defendant from the contract. After some conversation the parties went to an attorney's office, had a formal contract drawn up and signed, and a new check was given. The first contract and the first check were then destroyed. At the time of signing the check the defendant stated that he did not have the money. After signing the second contract and check, the defendant went immediately to the home of his banker, it being after business hours, and told him what he had done. At that time he was very excited and nervous, and was crying, and stated that "they had talked him into it."

Upon the question of the value of the land the plaintiff's agent admits that he told the defendant that it was worth $275 an acre. The weight of the testimony on behalf of the plaintiff was to the effect that the land was worth $250 an acre. The defendant's testimony indicated that it was worth $150 an acre. The trial court found that it was not worth more than $250 an acre.

Upon an examination of the record *de novo*, we are quite convinced that on account of the mental weakness of the defendant, his lack of business experience, his want of knowledge of the value of the land, he was unduly influenced to enter into the contract, and that he did not exercise a deliberate judgment concerning his own interests. It is quite apparent that he did not want to make the contract, but in the presence of the plaintiff and his agent he seemed to readily acquiesce in their suggestions.

While, generally speaking, a court of equity cannot un-

dertake to inquire into and measure the difference in the business sagacity of men in their dealings, yet it is obvious that mental weakness, although not sufficient to show an absolute disqualification, is a very important circumstance in determining whether a contract has been obtained through fraud, imposition, or undue influence, and when the contract is of such a nature as to justify the conclusion that a party has been imposed upon by cunning, artifice, or undue influence, a court of equity will not hesitate to set the contract aside. *Clough v. Adams,* 71 Ia. 17; Story, Equity Jurisprudence (4th ed.) sec. 337; *Meyer v. Fishburn,* 65 Neb. 626. It is also established that specific performance will be denied upon less proof than is required to set aside a contract. In *Edmiston v. Hupp,* 98 Neb. 84, it was held: "Specific performance is not generally a legal right, but is directed to the sound discretion of the court, and it will not be granted where its enforcement would be unjust." The same principle is announced in *Goodall v. Swartsley,* 108 Neb. 753; *Simmons v. Baker,* 109 Neb. 853. The circumstances presented by the record are such as to fully warrant a court of equity in denying specific performance of the contract.

The judgment of the district court is

AFFIRMED.

Note—See Specific Performance, 36 Cyc. pp. 548, 550, 784 (1925 Ann.).