MATILDA CUNNINGHAM, APPELLANT, V. WILLIAM HOMES BREWER ET AL., APPELLEES.

13 N. W. 2d 113

FILED FEBRUARY 4, 1944. No. 31658.

*Ernest F. Armstrong, Edgar Ferneau* and *Lowell E. Hahn,* for appellant.

*J. H. Falloon* and *Dwight Griffiths,* guardian *ad litem, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL and WENKE, JJ., and POLK and NUSS, District Judges.

WENKE, J.

This action was commenced in the district court for Nemaha county by Matilda Cunningham, as plaintiff, to cancel a deed to William Homes Brewer, John James Brewer, and Edna May Brewer, defendants, to a certain tract of land located within the corporate limits of Auburn, Nebraska, on the ground that plaintiff was induced by fraud to execute the deed for an inadequate consideration. From a judgment in favor of the defendants and dismissing her petition, the plaintiff has appealed.

William Cunningham, husband of the plaintiff, filed a petition of intervention, to the same effect as the plaintiff, which was dismissed and from which action the intervener has taken no appeal.

For the purpose of this action the plaintiff will be referred to as Mrs. Cunningham, her husband as Mr. Cunningham, the defendant William Homes Brewer as Brewer, and the three defendants collectively, William Homes Brewer, John James Brewer, and Edna May Brewer, as grantees.

The first question is whether or not there is such a variance between the pleadings and the proof as to defeat Mrs. Cunningham's right to recover. The rule is announced in *Foote v. Chittenden,* 106 Neb. 704, 184 N. W. 167, as follows: "A party will not be permitted to plead one cause of

action and upon the trial rely on proof establishing a different cause. The allegations and proof must agree." However, the party may allege as many different grounds for cancellation and vacation of the deed as he desires and failure to prove one of the grounds will not prevent a recovery on the others.

In her petition seeking to cancel and annul the deed Mrs. Cunningham alleged that she was the owner of the property and that Mr. Cunningham had no interest therein. The evidence discloses that she, together with Mr. Cunningham, were the owners of the property as joint tenants with right of survivorship and that the same was their homestead. While the interest of Mrs. Cunningham is not the full title, it is, however, a substantial interest therein and sufficient to sustain her action to cancel and annul the deed.

Mrs. Cunningham's petition alleges a conspiracy between Brewer and Mr. Cunningham to defraud and deprive her of her property. The evidence fails to sustain this allegation. The grantees contend that this is such a variance between the pleadings and proof as will defeat the action. In so far as this contention is concerned it is applicable to the allegations of conspiracy. If that was the only allegation contained in the petition, then the grantees' contention would have to be sustained. But from an examination of the petition as a whole we find it alleges that Mrs. Cunningham is a woman, who, because of her advanced years, is in an enfeebled mental and physical condition; that she did not know the value of her property; that she was not advised as to the amount of the consideration she was receiving; that Brewer and Mr. Cunningham informed her that she was about to lose her property because of the taxes; that these statements were false in that while the taxes were delinquent on the property it could not be sold for more than two years; that they failed to inform her of her rights; that she believed and relied thereon; that Brewer knew the value of the property and that the amount he was offering was inadequate; that Brewer knew she did not realize that she was conveying her property for an inadequate considera-

tion, together with many other similar allegations, and then praying that the deed be canceled and annulled. These allegations are sufficient to sustain the action and find support in the evidence.

This being an equitable action it will be tried here *de novo*. The record discloses that Mr. and Mrs. Cunningham, who had been married for about 22-23 years and during that time lived in Auburn, purchased the property involved on the 27th day of February, 1932, for a recited consideration of $5,000. The deed was taken to William Cunningham and Matilda C. Cunningham, husband and wife, as joint tenants with the right of survivorship and that since its purchase they have been occupying it as their home. This was the second marriage of Mrs. Cunningham, her first husband having died leaving her some property and from the proceeds of which this property was purchased.

At the time of the transaction herein involved Mrs. Cunningham was approximately 88 years of age and suffering from senile dementia due to extreme age. Her eyesight had been affected so that she was unable to read or write and had difficulty recognizing her friends. She had become partially physically incapacitated and it generally appears from the record that she was afflicted with the conditions usually affecting people of this extreme age. Mr. Cunningham was a man 70 years of age who was illiterate and was addicted to the excessive use of intoxicating liquors.

William Homes Brewer is the father of John James Brewer and Edna May Brewer who are his minor son and daughter and who are all named as grantees in the deed.

The property involved consists of an acreage tract located in the outskirts of Auburn of some 10 or 11 acres in area and improved with a two-story dwelling, which was in need of repairs, a garage, a good sized barn, a cave, fenced, serviced with electric lights and water, and located on a graveled road. It had a reasonable market value of somewhere between $1,500 and $2,000.

The taxes on the premises were delinquent since 1937 and Brewer purchased a tax sale certificate on October 21, 1942,

in the sum of $400. Then he contacted Mr. Cunningham with reference thereto. Shortly after the conversation with Mr. Cunningham, Brewer went to the home of the Cunninghams to negotiate with reference to a deed for the premises. It appears that Brewer had agreed to give Cunningham $150 in cash but Mrs. Cunningham was not informed of this fact. She was advised that they would be removed from the premises shortly because of these delinquent taxes but if they deeded the land to the grantees that she would be given a lease on the house for her lifetime. The Cunninghams and Brewer then went to the office of Mr. Rutledge, an attorney in Auburn, and while she remained in the car, Mr. Cunningham and Brewer went up to the office and there advised Mr. Rutledge to make out a deed to the grantees which recited a consideration of one dollar, but told him the consideration actually was the taxes Brewer had paid and the life use of the house to be given to Mrs. Cunningham. Mr. Rutledge then went down to the car and Mrs. Cunningham signed the deed. He then made out a lease on the home for the period of Mrs. Cunningham's life. They then got back into the car and drove to the Cunninghams and after Mrs. Cunningham got out of the car and went into the house Brewer paid Mr. Cunningham $150 in cash.

It appears from the record that Mrs. Cunningham had no knowledge at any time of the fact that her husband was receiving $150 and that she was informed by both Mr. Cunningham and Brewer that she would be dispossessed of the property by reason of the taxes. Whereas, all that Brewer had was a tax sale certificate on which he could take no action for two years and then it would require the necessary legal proceedings to obtain title and possession. It also appears from this transaction that all Brewer was paying for the property was a total consideration of $550 in cash plus the use of the house for the duration of Mrs. Cunningham's life. The medical testimony shows that Mrs. Cunningham, because of the fact that she was suffering from senile dementia due to old age, was not fully competent to transact business.

"Although mental weakness may fall short of entire incompetency to transact business, if it is taken advantage of to procure a conveyance by inequitable means, the conveyance may be set aside." *Bennett v. Bennett*, 65 Neb. 432, 91 N. W. 409.

"A court of equity will scrutinize jealously a transaction as to which there is ground for holding that influence has been acquired over a person of weak mind, and has been abused." *Bennett v. Bennett, supra.* See, also, *Scott v. Swank*, 132 Neb. 720, 273 N. W. 25.

"While, generally speaking, a court of equity cannot undertake to inquire into and measure the difference in the business sagacity of men in their dealings, yet it is obvious that mental weakness, although not sufficient to show an absolute disqualification, is a very important circumstance in determining whether a contract has been obtained through fraud, imposition, or undue influence, and when the contract is of such a nature as to justify the conclusion that a party has been imposed upon by cunning, artifice or undue influence, a court of equity will not hesitate to set the contract aside. *Clough v. Adams*, 71 Ia. 17; Story, Equity Jurisprudence (4th ed.) sec. 337; *Meyer v. Fishburn*, 65 Neb. 626." *Wilson v. Bergmann*, 112 Neb. 145, 198 N. W. 671.

"The acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justifies the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, or artifice, or undue influence." Story, Equity Jurisprudence, as approved in *Meyer v. Fishburn, supra.*

Under the facts of this case, Brewer, a man 57 years of age and experienced in business, purchased a tax-sale certificate on the homestead of Mr. and Mrs. Cunningham for $400, the property being worth from $1,500 to $2,000; then proceeded to negotiate with Mr. Cunningham, a man 70 years of age who could neither read nor write and who was an habitual drunkard, and through him led Mrs. Cunning-

ham to believe that she was to be evicted from the property; secretly offered and subsequently paid Mr. Cunningham $150; then obtained Mrs. Cunningham's signature to the deed for the consideration of a life lease to her of the house located on the premises and thus took from her the homestead for a grossly inadequate consideration, she being a woman 88 years of age, physically and mentally weak because of her extreme age, unable to read or write or recognize people because of her failing eyesight and who was afflicted with senile dementia which impaired her mental faculties such that she was not fully competent to transact business. This court has no hesitancy in setting aside a deed thus obtained.

In doing so we have not overlooked the rule as announced in *Bingaman v. Bingaman*, 85 Neb. 248, 122 N. W. 981: "While it is the rule in this state that a preponderance of the testimony is all that is required to sustain a finding in a civil case, still what constitutes a preponderance may vary largely according to the circumstances of each case. Where it is sought to set aside a written instrument, and more especially one which has been executed with the formality of being signed in the presence of witnesses and acknowledged before a notary public, on account of fraud, the presumptions of validity and regularity attaching to such a document require clear and convincing evidence to preponderate against them. The formal instrument furnishes proof of the most cogent and solemn character, and to outweigh this proof requires a greater quantum of evidence than in a case where there are no such presumptions to overcome." Nor have we overlooked the fact that the trial court observed the witnesses and their manner of testifying.

The decree of the lower court is vacated and set aside with directions to the lower court to enter a decree that if Mrs. Cunningham, within 90 days from the entry thereof, pay into court the sum of $150 for the appellee, William Homes Brewer, being the amount he paid to Mr. Cunningham and which amount she offered to pay in the trial court, same to be without interest, that the deed and lease be va-

cated and set aside. That if Mrs. Cunningham fails to pay said amount into court within the time fixed, then the deed and lease be held in full force and effect. That in either event all costs be taxed to William Homes Brewer. Mrs. Cunningham is given the further right, during the above period of 90 days, to pay into court for the use of William Homes Brewer the sum of $400, without interest, in full satisfaction for all taxes paid by him as shown by the tax sale certificate which the record shows he surrendered to the county treasurer.

REVERSED, WITH DIRECTIONS.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

The original opinion in this case was released on February 4, 1944, and is reported, *ante*, p. 211, 13 N. W. 2d 113. We granted a rehearing on the question of defect of parties which was not presented and therefore not considered in the original opinion.

William Cunningham and Matilda Cunningham, the plaintiff, are husband and wife and were the owners of the property, the deed to which the plaintiff seeks to cancel, as joint tenants with right of survivorship, the same being their homestead. William Cunningham was not made a party to the original action, either as plaintiff or defendant. After trial, but before decree, he attempted to intervene but his petition of intervention was dismissed and he did not appeal therefrom nor was he made a party to the appeal. The failure to make William Cunningham, one of the grantors to the deed sought to be canceled, a party was not raised by the defendant grantees either by demurrer or answer.

The general rule is that in suits for rescission or cancellation all persons whose rights, interests or relations with or through the subject matter of the suit would be affected by the cancellation or rescission should be brought before the court so that they can be heard in their own behalf.

As stated in 12 C. J. S. 1027, sec. 52: " * * * All persons whose rights, interests, or relations with or through the subject matter of the suit would be affected by the cancellation or rescission are proper and necessary parties in order that they may have an opportunity to be heard; and unless they are made parties the court is precluded from rendering a judgment or decree of cancellation. * * * All parties to the instrument sought to be canceled are necessary parties to the suit for cancellation, either as plaintiffs or as defendants, unless it is obvious that the one not joined has no interest whatever in the subject matter of the suit." See, also, 9 C. J. 1225. These principles find support in the decisions of Alabama, California, Florida, Georgia, Illinois, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Montana, New York, North Carolina, Oklahoma,

Oregon, Texas, Virginia, Washington, West Virginia, Wisconsin and Federal.

But section 20-806, Comp. St. 1929, provides in part: "The defendant may demur to the petition only when it appears on its face, * * * Fourth. That there is a defect of parties, plaintiff or defendant; * * * ." And section 20-808, Comp. St. 1929, provides: "When any of the defects enumerated in section one hundred and seven (20-806) do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken either by demurrer or answer the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitue (constitute) a cause of action."

As stated in *Nason v. Nason*, 79 Neb. 582, 113 N. W. 139: "A defect of parties must be taken advantage of by demurrer or answer, or the defect will be deemed waived," and further, that "No objection was taken in the trial court of a defect of parties, and, under the provisions of our code, if Nattinger was a necessary party the defect has been waived. Code, sec. 96 (now Comp. St. 1929, sec. 20-808)." See, also, *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463, 62 N. W. 899; *Edney v. Baum*, 70 Neb. 159, 97 N. W. 252; *Johnson v. Platte Valley Public Power and Irrigation District*, 133 Neb. 97, 274 N. W. 386.

Whether or not the defect appeared on the face of the petition by the allegation that the property, which plaintiff and her husband conveyed, was their home and therefore requiring such defect of necessary parties to be raised by demurrer, need not be here determined for the defendant grantees did not raise it by either demurrer or answer.

However, as stated in *Reformed Presbyterian Church v. Nelson*, 35 Ohio St. 638: "The proposition that, where no objection is made by demurrer or answer on account of the defect of parties, the objection is to be deemed as waived, applies only in cases where it is competent for the party pleading to waive the objection. But where the presence of an absent party is essential to the determination of the

controversy, the parties can not waive the objection. The court, in such case, must order the party to be brought in."

Section 20-323, Comp. St. 1929, provides: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy can not be had without the presence of other parties, the court must order them to be brought in." In *Phoenix Mutual Life Ins. Co. v. City of Lincoln*, 87 Neb. 626, 127 N. W. 1069, we held: "When the determination of a controversy cannot be had without the presence of new parties to the suit, the code directs the court to order them to be brought in. Code, sec. 46 (now Comp. St. 1929, sec. 20-323)." We have defined indispensable parties in *Jordan v. Evans*, 99 Neb. 666, 157 N. W. 620, as follows: "Indispensable parties to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." See, also, *Florida Land Rock Phosphate Co. v. Anderson*, 50 Fla. 501, 39 So. 392; *Bonsal v. Camp*, 111 Va. 595, 69 S. E. 978; *Shields v. Barrow*, 17 How. 130, 15 L. Ed. 158.

As stated in *Smith v. Shaffer*, 29 Neb. 656, 45 N. W. 936: "When it appears that all the parties necessary (and indispensable) to a proper and complete determination of an equity cause were not before the district court, the supreme court may remand the cause for the purpose of having such parties brought in."

One of the conditions upon which the remedy of rescission is granted is that the parties be restored to their original status. That cannot be done unless all indispensable parties are properly brought before the court. Both grantors of this property, which constituted their homestead and which they owned as joint tenants with right of survivorship, were not parties to the action and before the court.

Their rights to this property are such that a final decree canceling the deed could not be made without materially affecting both of them. They were both indispensable parties in an action to cancel their deed because of fraud. When this appears neither the court of original jurisdiction nor the appellate court should proceed further in the matter until the omission is corrected, even though, as here, no proper objection was made by any party litigant. It is therefore ordered that the cause be remanded to the district court with directions to make William Cunningham a party to this action and proceed with a retrial of the cause.

The plaintiff failed to make William Cunningham a party and no proper objection to such defect was raised by the defendant grantees. Therefore, the costs of this proceeding to date are taxed equally, one-half to the plaintiff and one-half to defendant grantees.

REVERSED, WITH DIRECTIONS.