THURMAN F. WENZEL ET AL., APPELLANTS, V. OLIVER R. WENZEL ET AL., APPELLEES.

116 N. W. 2d 788

Filed June 22, 1962.   No. 35180.

William L. Walker and Earl Ludlam, for appellants.

F. C. Radke and Wagener & Marx, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is a suit in equity brought by Thurman F. Wenzel and wife to quiet title to a quarter section of land specifically described in the petition as against a note and mortgage for $19,990 and to recover $16,000 paid on the purchase price of the land. The second cause of action raises the issue of the amount owing for pasture rent by the plaintiffs under a written lease. The third cause of action raises the question as to whether or not plaintiffs are entitled to make conditional payments to the

clerk of the district court on the $19,990 mortgage to avoid a default in payments thereon when the payments are due the executor of the estate of Fred C. Wenzel, deceased. The fourth cause of action is for the partition of the lands in the estate of Fred C. Wenzel, deceased. The trial court found generally against the plaintiffs and for the defendants on all causes of action, and the plaintiffs have appealed. We shall deal with each cause of action in the order above stated.

Fred C. Wenzel died on April 4, 1960, owning 5 tracts of land designated in the record as follows: The Home Place containing 160 acres, the North Place containing 160 acres, the Hay Shed Place containing 160 acres, the Berlett Place containing 145 acres, and the Cass County Eighty, containing 80 acres. Fred C. Wenzel died testate, having executed a will on September 2, 1958. His wife predeceased him, she having died on April 26, 1958.

On February 25, 1960, Fred C. Wenzel entered into a written contract to sell the Home Place to his son, Thurman F. Wenzel, the principal plaintiff herein, for the sum of $36,000, payable as follows: $10 in cash and $16,000 by a mortgage in that amount to be placed on the land by Fred C. Wenzel which plaintiffs were to assume. Upon the payment of the $16,000 mortgage, the deed which was placed in escrow was to be delivered to plaintiffs who at the same time were to execute and deliver a note and mortgage for $19,990 to Fred C. Wenzel. Because of the illness of Fred C. Wenzel, the parties on February 29, 1960, orally amended the contract of sale to provide for the immediate delivery of the deed, the obtaining of a first mortgage by plaintiffs to make the $16,000 payment, and the giving of a second mortgage to Fred C. Wenzel in the amount of $19,990.

Before the application for the first mortgage was approved, Fred C. Wenzel died. His son, Oliver R. Wenzel, was appointed special administrator and then executor of his father's estate. On April 12, 1960, following the death of Fred C. Wenzel on April 4, 1960, a copy of the

will of Fred C. Wenzel and a copy of the notice of probate were mailed to all the heirs of Fred C. Wenzel, including the plaintiffs, which plaintiffs admit they received. On April 22, 1960, plaintiffs notified the heirs, the special administrator, and the latter's attorney, that they were ready, willing, and able to complete the real estate transaction, and desired to do so. On April 26, 1960, the transaction was closed. The first mortgage was executed and delivered to the mortgagee, $16,000 was paid to the special administrator by plaintiffs, the deed was delivered by the escrow agent, and the note and second mortgage for $19,990 were likewise delivered to the special administrator.

The will of Fred C. Wenzel was admitted to probate on May 19, 1960, and Oliver R. Wenzel was at that time appointed executor by the county court. On June 8, 1961, plaintiffs filed their amended petition alleging that under the fifth paragraph of the will of Fred C. Wenzel the debt of $36,000, other than the $10 cash payment, was forgiven and that plaintiffs were entitled to receive back the $16,000 paid to the special administrator and to have the $19,990 note and second mortgage cancelled and held for naught, and that title to said real estate should be quieted in the plaintiffs.

The fifth paragraph of the will of Fred C. Wenzel provided: "If at my decease any of my children shall be indebted to me such debts shall not be an asset of my estate and shall be forgiven." The primary question raised as to the first cause of action is whether or not the cited provision of the will had the effect of forgiving the purchase price of the farm except for the cash downpayment of $10, and whether or not plaintiffs are estopped from asserting the fifth paragraph of the will as the basis for recovering back the $16,000 and securing the cancellation of the $19,990 note and mortgage.

The defendants first contend that the contract of sale between Fred C. Wenzel and Thurman F. Wenzel was conditional or contingent and therefore not a debt within

the meaning of the fifth paragraph of the will. We shall not discuss or pass upon that question for the reason that the case is determinable under the law of equitable estoppel.

The controlling facts are as follows: The contract of sale was entered into by Fred C. Wenzel and Thurman F. Wenzel on February 25, 1960. On February 29, 1960, the parties orally modified the contract by providing for the immediate delivery of the deed and the procuring of the $16,000 mortgage by the plaintiffs instead of by Fred C. Wenzel as first contemplated. Thurman F. Wenzel made application for a first mortgage loan on February 29, 1960, and the deed to the land was placed in the hands of an escrow agent on that date. Before the loan was approved, or obtained, Fred C. Wenzel died. A petition for the probate of the will of Fred C. Wenzel was filed on April 4, 1960. On April 12, 1960, copies of the will of Fred C. Wenzel and the notice of probate were mailed and received by plaintiffs. On April 22, 1960, plaintiffs notified the heirs of Fred C. Wenzel that they were ready, willing, and able to complete the real estate transaction, and advised them that plaintiffs would be prepared to close the transaction at the place stipulated in the contract of sale on April 26, 1960, at 2 p.m. The parties met at the designated place at the hour set. The plaintiffs paid $16,000 to the special administrator. The escrow agent delivered the deed to the plaintiffs and the note and mortgage for $19,990 to the special administrator. The transaction was completely closed.

There is evidence in the record that the market value of the land was $40,000. The contract price was $36,000. Thurman F. Wenzel served notice of his desire and ability to close the transaction. It was completed in accordance with his demand and the terms of the agreement made. It is quite evident that plaintiffs desired to complete the transaction in accordance with the contract of purchase and the oral modifications made there-

to. Plaintiffs had received a copy of the will before the transaction was closed. They knew and understood its contents. They elected to close the transaction in accordance with the contract of purchase, and made no claim that the purchase price other than the $10 cash payment was forgiven by the fifth paragraph of the will. The motivating factors which impelled plaintiffs to press for an immediate closing of the transaction are not shown by the record. We can only speculate that they may have considered the purchase price to have been less than the value of the land, or had doubts of the position they now present to this court. In any event, they elected to demand the delivery of the deed. They performed all covenants of the purchase contract. They voluntarily paid the $16,000 and executed and delivered the note and mortgage for $19,990.

After the contract of purchase was fully complied with in accordance with its terms, they assert that they are entitled to receive back the $16,000 and to have the note and mortgage cancelled. They are estopped from asserting the claim they are presently litigating.

In Securities Acceptance Corp. v. Brown, 171 Neb. 406, 106 N. W. 2d 456, this court stated: "The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit. And so also the acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel."

In Cotner College v. Estate of Hester, 155 Neb. 279, 51 N. W. 2d 612, we quoted the following with approval: " 'Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations,

or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.' "

Thurman F. Wenzel admits that he read the will of Fred C. Wenzel and understood its contents before he served notice on the heirs that he was ready, willing, and able to close the transaction in accordance with the terms of the real estate contract. It must be assumed, we think, that he preferred to take the land at the contract price rather than to risk litigation as to the interpretation of the will of Fred C. Wenzel. His insistance on closing the deal in accordance with the contract foreclosed any dispute as to the intention and effect of his father's will. He elected to take the benefits of the contract of purchase as orally modified. He further recognized the validity of the transaction by paying into court the first installment of principal and interest on the $19,990 second mortgage amounting to $1,500. Equity will not permit plaintiffs, after complying with the real estate contract and accepting its benefits with full knowledge of the import of the fifth paragraph of the father's will, to now assert it in order to escape the liability they assumed with their eyes open. Plaintiffs will not be permitted to obtain title to the land by asserting their rights under the contract and after obtaining the title to disavow the means employed to obtain it. Under such circumstances plaintiffs will not be permitted to retain the benefits and avoid the obligations they assumed in order to obtain them. The position that plaintiffs have assumed is unconscionable and inequitable, and is not deserving of the helping hand of a court of equity. The facts require a court of equity to apply the rules of equitable estoppel and deny relief.

The second cause of action involves the amount of pasture rent due under a written lease entered into on Feb-

·ruary 25, 1960, between Fred C. Wenzel as lessor and Thurman F. Wenzel as lessee. The lands leased were the Berlett Place, the North Place, and the Hay Shed Place. The North Place was specifically excluded from the lease until March 1, 1961. The lease in question was for a term of 5 years beginning on March 1, 1960, and terminating on February 28, 1965. By the terms of the lease Thurman F. Wenzel agreed to· pay Fred C. Wenzel "$6.00 per acre for about 75 acres of pasture;" payable on September 1 of each year.

Thurman F. Wenzel testified that there are 20 acres of pasture on the Berlett and the Hay Shed Places and ·55 acres on the North Place. Since the North Place was excepted from the first year of the lease, he tendered $120 as the rental for the 20 acres on the Berlett and Hay Shed Places. The tender was refused by the executor. The executor contends there were 22 acres fenced as·pasture on the Berlett Place. He testified also that there were approximately 13 acres fenced on the Hay Shed Place and that there were additional acres available for pasture which included waterways and turn rows. The trial court found that approximately 60 acres of pasture were to be paid for as pasture at the rate of $6 per acre on the Berlett and Hay Shed Places. We do not think the evidence sustains this finding. After a consideration of all the evidence we conclude that there are 35 acres of pasture on the Berlett and Hay Shed Places within the meaning of the lease and that plaintiffs owe $210 as rent therefore for the year 1960. The judgment of the district court will be modified accordingly.

On the third cause of action the trial court found that the payments of interest and principal on the $19,990 note and mortgage should have been paid to the executor and not to the clerk of the district court and directed the clerk of the district court to pay any amounts so held to the executor. The disposition of this cause of action by the trial court is correct.

The fourth cause of action prays for the partition of the real estate in accordance with the respective shares of the heirs of Fred C. Wenzel. On this question the sixth and seventh paragraphs of the will of Fred C. Wenzel are pertinent. They are as follows:

"SIXTH, all the rest and residue of my estate I give, devise and bequeath to my nine children, sons and daughters, in equal shares, subject, however, to the following:

"At this time some of my land is subject to mortgage debt. It is my will therefore that my Executor, or his successor in office, keep my estate open and operate my farms until the said mortgage debt is paid if there remains not sufficient personal estate out of which to pay said mortgage debt; and my Executor, or his successor in office, is hereby fully empowered to operate generally all of my farm lands and to borrow money for such purpose if needed, from Lincoln Production Credit Association, and to pledge necessary security for such loans to the same extent that I could have done in my lifetime. The operation of my farm lands for the above stated purpose shall not continue for more than five years. The pay for the Executors special services in operating the farms as above intended shall be determined and authorized by order of the County Court. My executor shall make a complete annual accounting of the farming operations as above authorized.

"SEVENTH. I hereby appoint my son Oliver Wenzel to be the Executor of this, my last will and testament and to administer my estate, hereby revoking all former wills made by me. I hereby empower my Executor, or his successor in office, to sell and convey any or all of my real estate without order of any court when the mortgage debt thereon has been paid, or at the end of five years if not paid. This provision is made for the convenience in making final distribution of my estate to the beneficiaries thereof and such sale or sales may be at either public or private sale subject only to the

approval of the County Court by order entered."

Ordinarily, the right to partition property is one of right and not a matter of grace. The right to partition, however, may be restricted by the terms of a testator's will where the restriction is reasonable. In the instant case the testator by paragraphs six and seven of his will provided that his estate should be kept open and his lands remain in the possession of the executor until the mortgages on his lands were paid off or for a period of 5 years whichever occurred first. Mortgages on the lands of the deceased in the approximate amount of $33,377.43, exclusive of the two mortgages placed on the Home Place after testator's death, existed on testator's lands at the time of trial. The restrictions on the sale of the lands were within the province of the testator to make. The restrictions against the sale of the lands were reasonable and lawful. The result is controlled by Peterson v. Damoude, 98 Neb. 370, 152 N. W. 786, 14 A. L. R. 1238, wherein it is said: "It is evident from the language of the will that it was the purpose of the testator to postpone a division of the estate until her death. The general rule is that an adult tenant in common may demand partition as a matter of right * * *; and the fact that he is a remainderman and that the particular estate has not expired is not a valid objection * * *; but equity will not award partition at the suit of one in violation of his own agreement or in violation of a condition or restriction imposed upon the estate by one through whom he claims * * *; nor is such a condition or restriction in the instrument conveying the estate invalid as repugnant to the estate granted, or as against public policy * * *. We regard the language of the will fixing the time at which the estate shall be divided as an express condition against partition prior to that time. No partition can be had, therefore, until the particular estate of Hanorah Dee is extinguished." The trial court properly denied partition in the instant case as being prematurely brought.

The judgment of the trial court is in all respects correct except as to the modification of the amount adjudged to be due under the second cause of action.

AFFIRMED AS MODIFIED.