LAWRENCE M. BAYE, PERSONAL REPRESENTATIVE OF
THE ESTATE OF JOHN L. BAYE, DECEASED, APPELLANT,
V. AIRLITE PLASTICS CO.,
A NEBRASKA CORPORATION, ET AL., APPELLEES.
GERTRUDE CROSBY AND NORWEST BANK NEBRASKA, N.A.,
TRUSTEE OF THE ROBERT F. CROSBY QUALIFIED
MARITAL TRUST DATED FEBRUARY 2, 1996, APPELLEES, V.
LAWRENCE M. BAYE, PERSONAL REPRESENTATIVE OF
THE ESTATE OF JOHN BAYE, DECEASED, APPELLANT.
618 N.W.2d 145

Filed September 22, 2000.    Nos. S-99-631, S-99-632.

Gary L. Hoffman and Thomas J. Culhane, of Erickson & Sederstrom, P.C., for appellant.

Gerald P. Laughlin, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Gertrude Crosby and Robert F. Crosby (the Crosbys) entered into a written stock option agreement (Agreement) with John L. Baye and Opal A. Baye (the Bayes). The Agreement provided, inter alia, that Robert would have the option to purchase 380 shares of common stock of Airlite Plastics Co. (Airlite) and that Gertrude would have the option to purchase 1,139 shares of Airlite stock. The price for the stock was set at $330 per share. As consideration, the Crosbys agreed to make an annual payment to the Bayes of $20,000. Contemporaneously, the Crosbys and the Bayes entered into an escrow agreement (Escrow Agreement), pursuant to which the Bayes' stock certificates were held in escrow with Robert as the escrow agent.

The Agreement was, by its terms, binding on the heirs and personal representatives of the signatories. The Agreement further provided that the Bayes were to receive the dividends from the stock prior to the options' being exercised. The Agreement also prohibited the Bayes from selling or otherwise transferring the shares, and the Bayes were prohibited from granting proxies to vote the shares except that they were required to grant proxies to the Crosbys upon request. The parties were required to keep the existence of the Agreement secret.

Opal died in 1989 and John died in 1994; consequently, all of the Bayes' shares became part of John's estate. Lawrence M. Baye is the personal representative of John's estate. During the Bayes' lifetimes, the Crosbys made, and the Bayes accepted, all the payments required under the Agreement. In addition, Lawrence accepted the 1995 payment on behalf of John's estate. In 1996, Robert assigned his rights under the Agreement to the Robert F. Crosby Trust. Robert died in 1996. Norwest Bank Nebraska, N.A. (Norwest), the trustee of the Robert F. Crosby Trust, transferred the rights to the Robert F. Crosby Qualified Marital Trust.

The payments due under the Agreement for 1996 were tendered to Lawrence but were refused. Lawrence also demanded that since a new escrow agent had not been appointed since Robert's death, the certificates held in escrow be returned to John's estate. In case No. S-99-632, Gertrude and Norwest, as

trustee of the marital trust, brought a declaratory judgment action seeking to have the Agreement declared valid and enforceable. In response, Lawrence claimed that the Agreement was void and unenforceable. Lawrence also brought a counterclaim seeking damages for conversion of the stock certificates, which had not been returned to John's estate. Lawrence also claimed that Gertrude and Norwest had not timely tendered a claim to the estate as required by Neb. Rev. Stat. § 30-2485 (Reissue 1995). Finally, Lawrence brought a separate petition for dissolution of Airlite, alleging that appellees Airlite; Bradley J. Crosby and Norwest, copersonal representatives of Robert's estate; and Gertrude breached fiduciary duties owed to the minority stockholders and engaged in a course of oppressive conduct. That action is appealed as case No. S-99-631.

Upon cross-motions for summary judgment, the district court generally rejected all of Lawrence's claims and entered summary judgment for appellees on all claims. The district court primarily found that the Bayes and John's estate accepted the benefit of the Agreement for several years. Thus, the district court determined that the Agreement was enforceable. The district court also determined that Lawrence failed to show that Gertrude and Norwest oppressed the minority shareholders or that Gertrude and Norwest converted the shares of stock.

## ASSIGNMENTS OF ERROR

Lawrence generally claims that the district court erred in sustaining appellees' motions for summary judgment. Consolidated and restated, his specific assignments of error can be grouped as follows:

Lawrence assigns that the district court erred in failing to find that the Agreement was invalid and unenforceable, because (1) the Agreement was a secret voting trust, (2) the Agreement expired upon John's death, and (3) the Agreement was a restraint on alienability.

Lawrence assigns that the district court erred in failing to find that the minority shareholders of Airlite had been oppressed, because (1) the controlling shareholders violated their fiduciary duty of candor, (2) Airlite failed to comply with Neb. Rev. Stat. §§ 21-20,112 to 21-20,115 (Reissue 1997), (3) the board of

directors of Airlite breached its duty of loyalty by failing to redeem the shares of stock held by John's estate, and (4) Airlite failed to pay meaningful dividends to the Bayes and John's estate and frustrated their reasonable expectations.

Lawrence further assigns that the district court erred in failing to find that this oppression (1) barred enforcement of the Agreement, (2) entitled Lawrence to damages in the amount of the dividends that should have been declared, and (3) entitled Lawrence to dissolution of Airlite.

Finally, Lawrence assigns that the district court erred in failing to find (1) that Gertrude and Norwest converted the Airlite stock by refusing to return it upon termination of the Escrow Agreement upon the death of Robert, the escrow agent, and (2) that Gertrude's and Norwest's claims to the stock were barred by their failure to comply with the claim provisions of the Nebraska Probate Code.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Adkins v. Burlington Northern Santa Fe RR. Co., ante* p. 156, 615 N.W.2d 469 (2000); *State Farm Mut. Auto. Ins. Co. v. Cheeper's Rent-A-Car,* 259 Neb. 1003, 614 N.W.2d 302 (2000). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Adkins v. Burlington Northern Santa Fe RR. Co., supra; Alegent Health Bergan Mercy Med. Ctr. v. Haworth, ante* p. 63, 615 N.W.2d 460 (2000).

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Mutual Group U.S. v. Higgins,* 259 Neb. 616, 611 N.W.2d 404 (2000); *Ritchhart v. Daub,* 256 Neb. 801, 594 N.W.2d 288 (1999).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Airport Auth. of Village of Greeley v. Dugan,* 259 Neb. 860, 612 N.W.2d 913 (2000); *Hobza v. Seedorff Masonry, Inc.,* 259 Neb. 671, 611 N.W.2d 828 (2000).

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Fraternal Order of Police v. County of Douglas,* 259 Neb. 822, 612 N.W.2d 483 (2000); *Ruble v. Reich,* 259 Neb. 658, 611 N.W.2d 844 (2000).

## ANALYSIS

### VALIDITY OF AGREEMENT

We turn first to Gertrude and Norwest's contention that Lawrence is estopped from challenging the validity of the Agreement. Gertrude and Norwest argue, and the district court found, that since the Bayes, and Lawrence as personal representative of John's estate, accepted the benefit of the Agreement by accepting payment thereunder, Lawrence cannot subsequently claim that the Agreement is invalid.

■ Under Nebraska law, the doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she has acquiesced or of which he or she has accepted any benefit. See, *Wenzel v. Wenzel,* 174 Neb. 61, 115 N.W.2d 788 (1962); *Securities Acceptance Corp. v. Brown,* 171 Neb. 406, 106 N.W.2d 456 (1960); *Schroeder v. Ely,* 161 Neb. 252, 73 N.W.2d 165 (1955); *In re Estate of Lee,* 137 Neb. 567, 290 N.W. 437 (1940); *Brisbin v. E. L. Oliver Lodge No. 335,* 134 Neb. 517, 279 N.W. 277 (1938).

■ The acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel. See, *Wenzel v. Wenzel, supra; Securities Acceptance Corp. v. Brown, supra; Schroeder v. Ely, supra; Brisbin v. E. L. Oliver Lodge No. 335, supra.* See, also, *Pearce v. ELIC Corp.,* 213 Neb. 193, 329 N.W.2d 74 (1982); *McLeod v. Crawford,* 176 Neb. 513, 126 N.W.2d 663 (1964); *Wegner v.*

*West*, 169 Neb. 546, 100 N.W.2d 542 (1960); *Einot, Inc. v. Einot Sales Co., Inc.*, 154 Neb. 760, 49 N.W.2d 625 (1951) (general rule is that assertion of invalidity of contract is nullified by subsequent acceptance of benefits growing out of contract). Accord *Bohrer v. Bohrer Realty Corp.*, 157 A.D.2d 458, 549 N.Y.S.2d 25 (1990) (applying estoppel to close corporation stock purchase).

■ The record establishes beyond any reasonable dispute that the Bayes accepted the benefit of the Agreement, by accepting $20,000 annually from 1987 until 1994, and that Lawrence accepted another $20,000 payment on behalf of John's estate in 1995. We also note that even though Lawrence accepted payment on behalf of the estate, the beneficiaries of John's estate would in any event be bound by the conduct of the Bayes, as an heir stands in privity with an ancestor, and an estoppel enforceable against the ancestor is likewise enforceable against the heir. See, *Grand Lodge I.O.O.F. v. Marvin*, 220 Neb. 197, 369 N.W.2d 54 (1985); *Focht v. Wakefield*, 145 Neb. 568, 17 N.W.2d 627 (1945) (superseded on other grounds by statute as stated in *In re Estate of Kopecky*, 6 Neb. App. 500, 574 N.W.2d 549 (1998)); *Jorgensen v. Crandell*, 134 Neb. 33, 277 N.W. 785 (1938).

Given the above-cited authority, we find that the district court correctly determined that the evidence establishes, as a matter of law, that Lawrence is estopped from asserting the invalidity of the Agreement. Therefore, Lawrence's assignments of error relating to the validity of the Agreement are without merit.

### PETITION FOR DISSOLUTION

■ We turn next to Gertrude and Norwest's argument that Lawrence lacks standing to pursue the dissolution of Airlite. As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 611 N.W.2d 404 (2000); *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999). Because the requirement of standing is fundamental to a court's exercising jurisdiction, a litigant or court before which a case is pending can raise the question of standing at any time during the proceeding. *Id.*

Although this court has not previously addressed a situation such as the instant case, courts in Illinois and New York have concluded that the purchase of stock pursuant to an option agreement deprives the vendor of standing to pursue a corporate dissolution action. See, *Dolezal v. Plastic & Reconstructive Surg.*, 266 Ill. App. 3d 1070, 640 N.E.2d 1359, 204 Ill. Dec. 10 (1994); *Weiner v. Anesthesia Associates*, 203 A.D.2d 455, 610 N.Y.S.2d 608 (1994); *Hesek v. 245 South Main Street, Inc.*, 170 A.D.2d 956, 566 N.Y.S.2d 127 (1991); *Martin Enterprises, Inc. v. Janover*, 140 A.D.2d 587, 528 N.Y.S.2d 855 (1988).

For instance, in *Hesek v. 245 South Main Street, Inc., supra*, the petitioner sought judicial dissolution of a corporation. The corporation gave timely notice of its intent to redeem the stock pursuant to a stock redemption agreement executed by the petitioner's deceased husband. *Id.* The court determined:

> Under the circumstances, respondents were entitled to an order directing petitioner to transfer the stock owned by decedent to the corporation pursuant to the 1973 agreement. Because petitioner is no longer the lawful holder of a stock interest in the corporation, respondents' cross motion for summary judgment dismissing her petition for judicial dissolution of the corporation . . . should have been granted.

*Id.* at 957, 566 N.Y.S.2d at 127.

Similarly, in *Martin Enterprises, Inc. v. Janover, supra*, the petition seeking dissolution was held properly dismissed. The court stated:

> Prior to commencement of the dissolution proceeding, the petitioner . . . was divested of her interest in the corporation under an option agreement for repurchase of stock entered into between the founder of the closely held corporation and his three children . . . . Since the petitioner was not a shareholder entitled to vote, she was without standing to bring a proceeding to dissolve the corporation
> . . . .

*Id.* at 587, 528 N.Y.S.2d at 856.

The basis of Lawrence's petition is Neb. Rev. Stat. § 21-20,162 (Reissue 1997), which provides in relevant part that "[t]he court may dissolve a corporation . . . (2) [i]n a proceeding

by a shareholder if it is established that . . . (b) [t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent." This statute clearly requires that the court's jurisdiction to dissolve the corporation is premised upon the petitioner's being a shareholder of the corporation.

In the instant case, the record establishes beyond dispute that Gertrude and Norwest exercised their options under the Agreement in August 1997 by notifying Lawrence through counsel that the options were being exercised and then tendering the purchase price established by the Agreement. Under the terms of the Escrow Agreement, once the Crosbys tendered the purchase price, which was done on August 6, 1997, the escrow agent was required to deliver the shares to the Crosbys. After the tender of the purchase price, John's estate was no longer the owner of these shares. Since John's estate did not own any shares, John's estate and Lawrence did not have standing, after August 6, 1997, to pursue the dissolution of Airlite. Furthermore, the record establishes that either Gertrude or Norwest was in physical possession of the stock certificates at the time the options were exercised—a fact judicially admitted by Lawrence in his counterclaim for conversion. See *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000). As Lawrence had no standing to maintain the action, both the district court and this court are deprived of jurisdiction over the case. Consequently, the appeal in case No. S-99-631 must be dismissed. We therefore do not reach Lawrence's assignments of error relating to the alleged oppression of Airlite's minority shareholders and to the dissolution of Airlite.

## CONVERSION

Lawrence argues that Gertrude and Norwest converted the shares of Airlite stock by failing to give them to John's estate upon the death of Robert. Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998). The plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion. *Id.*

The situation is complicated by the fact that Robert served as escrow agent when he was also a party to the transaction. See, e.g., *Pike v. Triska*, 165 Neb. 104, 119, 84 N.W.2d 311, 321 (1957) (escrow agent to be " 'stranger or third person' "); 28 Am. Jur. 2d *Escrow* § 16 at 25 (1966) (escrow holder to have "no personal interest in the escrow deposit other than carrying out his [or her] obligations under the escrow agreement" and should be "impartial in his [or her] dealings with both the depositor and the beneficiary"). As the issue has not been addressed by the parties, we do not comment on what, if any, effect Robert's conflict of interest might have had on the validity of the escrow.

▮ Nonetheless, both the Agreement and the Escrow Agreement explicitly provide that these contracts were to survive the deaths of the parties and were to be binding on the parties' heirs and beneficiaries. Given this clear language, we cannot conclude that where the Agreement and the Escrow Agreement were to survive Robert in his capacity as a party to the transaction, they can be defeated by Robert's death in his capacity as escrow agent. An appellate court construes a contract to give effect to the parties' intentions at the time the writing was made. See, e.g., *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000); *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999). As the parties clearly intended for the Agreement and the Escrow Agreement to survive the parties, the language of those contracts does not support Lawrence's contention that the Escrow Agreement was defeated by Robert's death.

Moreover, it is clear that once Gertrude and Norwest exercised their options to purchase the stock, they, and not Lawrence, were entitled to possession of the certificates. Given that, we find that Lawrence cannot be said to have suffered any damages from Gertrude and Norwest's possession of the stock certificates, even if conversion had occurred. Under such circumstances, we find that the district court did not err in determining that Lawrence's counterclaim as to his first cause of action should be dismissed.

### FAILURE TO PAY DIVIDENDS

Although the appeal of the dismissal of Lawrence's petition for dissolution must be dismissed, Lawrence's assignment of

error relating to the alleged failure to pay reasonable dividends relates in part to the second cause of action in his counterclaim in the declaratory judgment action, wherein he requested damages in the amount of the dividends that should have been paid. This claim, however, is properly brought against Airlite, which is not a party to the declaratory judgment action.

Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000). A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights. *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995).

The record establishes that the corporation was not under the actual control of either Gertrude or Norwest. Therefore they cannot, as a matter of law, be held liable for any failure of Airlite to pay reasonable dividends. As Airlite itself is not a party to the declaratory judgment action, Lawrence's assignment of error is without merit.

### CLAIM PROVISIONS OF NEBRASKA PROBATE CODE

Finally, we consider Lawrence's contention that Gertrude and Norwest were barred from exercising their purchase options by their failure to comply with the claim provisions of the Nebraska Probate Code. Lawrence relies upon § 30-2485, which provides, in relevant part:

(a) All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) Within two months after the date of the first publication of notice to creditors if notice is given in compli-

ance with sections 25-520.01 and 30-2483, except that claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state. If any creditor has a claim against a decedent's estate which arose before the death of the decedent and which was not presented within the time allowed by this subdivision, including any creditor who did not receive notice, such creditor may apply to the court within sixty days after the expiration date provided in this subdivision for additional time and the court, upon good cause shown, may allow further time not to exceed thirty days;

(2) Within three years after the decedent's death if notice to creditors has not been given in compliance with sections 25-520.01 and 30-2483.

Even assuming that the exercise of the Agreement was a "claim" within the meaning of § 30-2485(a)—a matter we do not decide—we find that the record establishes that Lawrence failed to comply with the notice provisions of Neb. Rev. Stat. §§ 25-520.01 and 30-2483 (Reissue 1995). The record establishes that Lawrence was aware of the existence of the Agreement and of the identity of the parties holding the options at the time of John's death. The "Affidavit of Mailing Notice" contained in the record, however, indicates that neither the Crosbys nor Norwest was notified as required by §§ 25-520.01 and 30-2483.

As such notice was not given, Gertrude and Norwest were required to present their claims to the estate within 3 years of John's death. See *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000). One of the means by which a claim may be presented is by the commencement of a proceeding against the personal representative in any court which has subject matter jurisdiction. See Neb. Rev. Stat. § 30-2486 (Reissue 1995). In the instant case, John died on December 2, 1994, and Gertrude and Norwest's amended petition, specifically seeking ownership of the stock, was filed on August 22, 1997.

Even assuming that the exercise of the options under the Agreement was a "claim" within the meaning of § 30-2485(a), we find that Gertrude and Norwest presented their claims within

the 3-year period allowed by the statute. Lawrence's assignment of error is therefore without merit.

## CONCLUSION

Lawrence lacks standing to maintain the dissolution action, and the appeal in case No. S-99-631 is dismissed for lack of jurisdiction. Lawrence is estopped from challenging the validity of the Agreement, and his counterclaim in the declaratory judgment action was properly dismissed; therefore, the judgment in case No. S-99-632 is affirmed.

APPEAL IN NO. S-99-631 DISMISSED.

JUDGMENT IN NO. S-99-632 AFFIRMED.

CONNOLLY, J., not participating.